## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22624-CV-SCOLA/TORRES

PAOLA VENERIO,

      Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

Three Motions are currently pending before this Court: (1) a Motion for Summary Judgment filed by Defendant FEDERAL EXPRESS CORPORATION ("FedEx" or "Defendant") on June 22, 2018 [D.E. 32]; (2) a Motion for Summary Judgment filed by Plaintiff PAOLA VENERIO ("Venerio" or "Plaintiff") on June 22, 2018 [D.E. 34]; and (3) Defendant's Motion to Strike Plaintiff's Declarations submitted in support of her Motion for Summary Judgment, which FedEx filed on July 9, 2018. [D.E. 43]. The Honorable Judge Robert N. Scola referred each to the undersigned on July 6 and August 1, 2018. [D.E. 40, 48]. After reviewing the parties' positions and the respective briefing materials submitted, in addition to the record evidence before us and all relevant legal authorities, we hereby **RECOMMEND** the following: (1) Defendant's Motion to Strike be **DENIED**; (2)

Plaintiff's Motion for Summary Judgment be **DENIED**; and (3) Defendant's Motion for Summary Judgment be **GRANTED**.

## I.    FACTUAL BACKGROUND

On July 13, 2017, Plaintiff filed suit in this Court against FedEx. [D.E. 1]. The two-count Complaint alleges Defendant violated the Florida Civil Rights Act ("FCRA") when she was subjected to sexual harassment by Eduardo Utset ("Utset"), her supervisor and boss. *Id.*, p. 2. Venerio alleges that she complained to human resources about Utset's behavior but that no disciplinary action was taken by the company. *Id.*, ¶¶ 8-11. The Complaint states that Utset became aware of Plaintiff's complaints to the human resources department about his alleged harassing behavior and retaliated against her by taking steps that prevented her from obtaining other positions within the company. *Id.*, ¶ 13-14. Plaintiff also alleges that Utset falsely accused her of falsifying her time records, an action that ultimately led to her termination at the company. *Id.*, ¶ 13-14.

Both parties now move for summary judgment. [D.E. 32, 34]. Plaintiff argues that she must prevail as a matter of law on both her sexual harassment and retaliation claims, arguing that she establishes *prima facie* cases in both instances that FedEx cannot rebut. [D.E. 34]. Defendant contends that summary judgment should be entered in its favor, claiming that the record evidence fails to establish that the alleged harassing behavior was sufficiently severe and pervasive, and arguing that the company terminated Plaintiff's employment for legitimate, non-

discriminatory reasons. [D.E. 32]. Both Motions are now fully-briefed and are therefore ripe for disposition.

### 1.    *The Alleged Sexual Harassment*

Plaintiff began working for Defendant in late 2014 after being offered a position as an administrative assistant to the managing director and regional controller of FedEx's Latin American Caribbean Division Headquarters ("LAC"). [D.E. 33, ¶ 1; D.E. 33-1, p. 89]. In this position, Plaintiff was assigned to Darren Cantrelle ("Cantrelle"), a Vice President working in the LAC Financial division, D.E. 33-2, ¶¶ 1-2, and Utset, a managing director in that division. [D.E. 33, ¶ 1]. Plaintiff contends she began working directly for Utset sometime in March of 2015. [D.E. 35-1, ¶ 4]. Defendant claims that Venerio's position as Utset's administrative assistant started immediately after she was hired. [D.E. 33, ¶ 1]. For purposes of this Report, the exact date when Plaintiff began working for Utset does not make a difference.

Regardless of the timing issues, Plaintiff nevertheless alleges that Utset engaged in sexually inappropriate behavior during the course of her employment as his administrative assistant. The alleged harassing behavior involved Utset dropping items in his office and requiring Plaintiff to retrieve those items from the floor; according to Plaintiff, Utset dropped the items intentionally so that he could watch Plaintiff bend over. [Depo. of P. Venerio, D.E. 33-1, pp. 8-9]. Plaintiff testified that Utset engaged in this behavior "between five and ten times" while she worked as his assistant, and that the incidents began occurring in June or July of 2015. *Id.*,

pp. 4-6. Plaintiff testified that Utset would apologize after each incident occurred and admitted that these occasions were never accompanied by any sexually-suggestive, offensive or inappropriate comments. *Id.*, pp. 12, 15-16; 33-34.[1] On several occasions, Plaintiff testified that Utset's behavior included physical touching, which she described as Utset "rubbing" or "brushing" up against her. *Id.*, pp. 12, 22. Plaintiff claims this occurred two or three times, and that Utset apologized for coming into contact with her after each instance. *Id.*, pp. 22-23, 25.

The parties dispute whether Plaintiff ever reported Utset's actions. Defendant denies this occurred; in doing so, it points to various items found in the record, including an e-mail sent by Plaintiff to human resources on September 25, 2015 – a time period in which Venerio claims Utset had been engaging in the alleged harassing behavior for at least five months[2] – in which she indicated she and Utset "had a wonderful working relationship" and that the two "always communicated very well." [Decl. of T. Allaben, D.E. 33-7, Ex. 1]. FedEx also submitted three statements from various individuals indicating that Venerio never mentioned any kind of harassing behavior. [*See* Decl. of B. Alexander, D.E. 33-3, ¶

---

[1] Venerio did discuss "demeaning" comments Utset allegedly made during his employment, none of which stemmed from the occurrence of any alleged sexually-harassing behavior. [Depo. of P. Venerio, D.E. 33-1, pp. 35-36]. In particular, Plaintiff claimed that Utset used the words "stupid" and "ignorant" to describe others, but later admitted that those comments were not "directed to anybody" and were used to express general frustration. *Id.*, p. 36.

[2] Plaintiff testified that Utset began sexually harassing her in June or July of 2015. [Depo. of P. Venerio, D.E. 33-1, p. 5].

4; Decl. of M. Borge Gutierrez, D.E. 33-4, ¶ 8; Decl. of T. Allaben, D.E. 33-7, ¶ 4; Decl. of E. Lopez-Virtue, D.E. 33-8, ¶ 10].

Plaintiff concedes that she never complained "in writing" about Utset's harassing behavior. [Depo. of P. Venerio, D.E. 33-1, pp. 17-19]. She nevertheless testified that she complained verbally to several supervisors and employees in the company's human resources department about the various incidents. *Id*., p. 26. Specifically, Venerio claims she reported Utset's behavior to Tim Allaben, Esperanza Lopez-Virtue, Ernesto Cubas and David Fato. *Id*., pp. 26-27. Allaben and Lopez Virtue deny this ever occurred. [*See* Decl. of T. Allaben, D.E. 33-7, ¶ 4; Decl. of E. Lopez-Virtue, D.E. 33-8, ¶ 10].

### 2.      *Plaintiff's Application for the Financial Analyst Position*

In 2015, a "financial analyst" position opened up within Defendant's Financial Planning and Analysis (FP&A") division. [Decl. of M. Borge Gutierrez., D.E. 33-4, ¶ 6]. Plaintiff applied to be considered. *Id*.; *see also* Depo. of P. Venerio, D.E. 33-1, p. 74. The interview process began with a three-member panel reviewing the credentials of each individual and interviewing prospective candidates. [Decl. of M. Borge Gutierrez., D.E. 33-4, ¶ 6]. Utset had no role in the panel's decision as to who to hire for the analyst position. *Id*. at ¶ 7. Venerio, in addition to several other FedEx employees that interviewed for the position, did not get the job, and Defendant selected a candidate from outside the company to fill the role. *Id*. at ¶ 6.

The parties do not agree as to why Plaintiff did not get the job. FedEx claims that Venerio lacked certain technical skills, needed additional classes to build her

knowledge base, and struggled with the examination that all candidates were required to take to be considered for the position. *Id.*, ¶ 6. Plaintiff argues that she struggled with the examination because she was not given the same amount of time as the other candidates were and that she was required to take the exam at work, as opposed to the other candidates, who were allowed to take the test at home. [Decl. of P. Venerio, D.E. 45, ¶ 4].[3] What is not disputed, however, is that Plaintiff did not get the position.

### 3.    *Plaintiff Applies for a Different Administrative Assistant Position*

In 2016, Benjamin Alexander – the Managing Director of the FP&A division at FedEx – determine that he needed a full-time assistant and sought interviews with applicants who might be interested in the position. [Decl. of B. Alexander, D.E. 33-3, ¶¶ 5-6]. Plaintiff and another individual, Alba Restrepo, applied for the job. *Id*. Like the FP&A financial analyst position Plaintiff had applied for, each candidate was interviewed by a three-member panel. *Id*. at ¶ 8. The panel consisted of Alexander, Esperanza Lopez Virtue and Justin Viator. *Id*. The panel asked each candidate to make a presentation and answer eight questions pertaining to the position. *Id*.

---

[3]    As will be discussed later, the declarations filed by Plaintiff in support of her Motion for Summary Judgment and in Response to Defendant's Motion should be disregarded almost entirely because the statements contained therein are contradictory, not based on personal knowledge, contain inadmissible hearsay, or are naked conclusory statements that lack any factual support. However, for purposes of developing a thorough recitation of the facts here, we will include certain assertions made in each declaration.

Plaintiff did not get the job. *Id*. Alexander chose Ms. Restrepo as his assistant. *Id*. Once again, the parties differ as to why this occurred. FedEx claims that Restrepo received higher marks for her responses to each of the eight questions asked, a conclusion shared by each member of the three-person panel. *See id*., Ex. 1. Further, Alexander felt that Venerio's answers lacked focus and specificity, and that at times she failed to answer certain questions. *Id*., ¶ 8. Alexander also claimed that Restrepo appeared better-prepared and provided more clarity when answering questions. *Id*. Plaintiff, on the other hand, takes issue with the statements contained in the panel's worksheets, although her claims amount to nothing more than disagreements about the "real meaning" behind the notations made by each panel member and set forth nothing beyond argumentative statements concerning the decision to give Restrepo the job. [Decl. of P. Venerio, D.E. 45, ¶ 6].

Plaintiff appealed the decision to give the position to Restrepo through FedEx's Guaranteed Fair Treatment process. [Decl. of B. Alexander, D.E. 33-3, ¶ 9]. Darren Cantrelle, Alexander's supervisor, heard that appeal (although Alexander was also present). *Id*. During the hearing Venerio claimed that Utset "was not allowing her to develop" and that she felt constrained by him, but Alexander and Cantrelle both state that she never mentioned the alleged sexually-harassing behavior or any other demeaning actions taken by Utset. *Id*., ¶ 9; Decl. of D. Cantrelle, D.E. 33-2, ¶ 9]. Cantrelle upheld Alexander's decision to give the job to Restrepo, finding that she was sufficiently qualified for the position and stating that

it would not be appropriate for Venerio to receive the job "simply because she was having problems in her existing position." [Depo. of D. Cantrelle, D.E. 33-2, ¶ 10].

### 4.      *Plaintiff's Termination*

Plaintiff, as an hourly employee, was required to keep accurate time cards reflecting the hours she worked, to include lunch breaks and other times when she left the office. [Def.'s Stmt. of Mat. Facts, ¶ 11, 15]. An employee that falsifies time records is subject to immediate termination. *Id*., ¶¶ 11-12, 14].

Plaintiff was warned about the need to be diligent with her time on more than one occasion. On June 22, 2015, Utset sent Plaintiff an e-mail summarizing a discussion the two had previously held the week prior. [D.E. 33-2, pp. 9-10]. The e-mail purportedly addressed concerns Utset had about "the length of time [Plaintiff was] away from [her] desk" on a previous occasion, which allegedly involved Plaintiff taking a two-hour lunch break. *Id*., p. 9. Utset indicated that Plaintiff also failed to communicate with anyone about her extended break, which prevented management from obtaining "coverage" from another administrative assistant to take Venerio's place while she was gone from the office. *Id*. The e-mail outlined various steps Plaintiff could take to be more effective at managing her time, and also discussed what the company expected of her. *Id*.

The discussions concerning Plaintiff's timeliness continued throughout the course of her employment. Benjamin Alexander submitted an affidavit in support of Defendant's Motion stating that he often noticed that Venerio arrived late on days when Utset needed to travel for work. [Decl. of B. Alexander, D.E. 33-3, ¶ 14]. He

also noticed that Venerio would take "late lunches" when Utset was out of the office. *Id*. Alexander conveyed this information to Utset. *Id*. Utset stated that he had been approached by Alexander on several occasions about Venerio's attendance, punctuality, and whereabouts. [Decl. of E. Utset, D.E. 33-5, ¶ 6]. Plaintiff disputes this version of events, claiming "Utset and [another administrative assistant] constantly conspired against her" in an attempt to get her fired. [Decl. of P. Venerio, D.E. 45, ¶ 16-17].

Sometime in May of 2016, Utset approached Cantrelle to discuss additional concerns he had about Plaintiff's time records. [Decl. of D. Cantrelle, D.E. 33-2, ¶ 12]. Utset believed that Plaintiff had falsified her time sheets. *Id*. Cantrelle told Utset to talk to security about the issue. *Id*. Utset contacted Steve Pittman, the senior manager of security in FedEx's Latin American Division, who initiated an investigation. *Id*.; *see also* Decl. of S. Pittman, D.E. 33-6, ¶ 2. Pittman compared Venerio's time sheets with entries found in the company's card reader system, which captures information such as the date, time, and location where an employee swipes his or her badge to gain entry to the building. [Decl. of S. Pittman, D.E. 33-6, ¶ 5]. Pittman used the card entry system to determine when Plaintiff arrived and whether the information provided in her time sheets was accurate. *Id*., Decl. ¶ 4. Pittman found that Plaintiff had not been providing accurate time sheets for the week beginning on May 10, 2016. *Id*., ¶ 6. He informed Utset, who in turn terminated Plaintiff's employment on June 17, 2016 for falsification of time records. [Decl. of D. Cantrelle, D.E. 33-2, Ex. 3]. Plaintiff denies that she lied on her time

sheets and claims that FedEx "had been experiencing glitches in the system [on the] week in question" and that certain key card evidence proving her innocence was withheld by the company. [D.E. 45, ¶¶ 19-21].

Plaintiff appealed the decision to terminate her employment. [Decl. of D. Cantrelle, D.E. 33-2, ¶¶ 13-14]. Cantrelle, who oversaw the appeal, upheld Utset's decision and found that her firing had been justified. *Id.*, Ex. 4. Specifically, Cantrelle found that Plaintiff had not provided any information demonstrating that she had not falsified time records. *Id.* ¶ 14. Plaintiff appealed Cantrelle's decision to the Latin American Division Appeals Board, which on August 10, 2016 upheld both Utset and Cantrelle's decision to terminate Venerio's employment. *Id.*, ¶ 15.

## II.   *LEGAL STANDARD*

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when a party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating, "by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*

Rule 56(c) requires the non-moving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). The non-moving party "may not rest upon the mere allegations or denials of [her] pleadings, but…must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007); *see also Bannum v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) ("If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment.").

### III.    ANALYSIS

**A.    _Plaintiff's Various Declarations_**

As an initial matter, and before we proceed to the substantive merits of both motions, we must first address Defendant's request that we strike declarations submitted by Plaintiff in support of her Motion for Summary Judgment and in Response to FedEx's Motion. [Decl. of P. Venerio, D.E. 35-1; D.E. 45-1]. Defendant argues that the declarations should be struck and not considered in deciding either Motion because the statements contained therein directly contradict statements made by Venerio during her deposition. Defendant also argue that the statements are "replete with hearsay, conclusory allegations, and pure speculation." [D.E. 43, p. 2].

District courts may disregard "sham affidavits" when evaluating summary judgment motions. _Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc._, 736 F.2d 656 (11th Cir. 1984); _Dimingo v. Midnight Xpress, Inc._, -- F. Supp. 3d --, 2018 WL 3235535, *2 (S.D. Fla. July 2, 2018). The Eleventh Circuit has held that "a district court may find an affidavit which contradicts deposition testimony a sham when the party merely contradicts its prior testimony without giving any valid explanation. _Van T. Junkins_, 736 F.2d at 656. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given testimony." _Id._ at 657.

12

It is also well-settled that self-serving or conclusory affidavits will not create an issue of fact for trial when submitted by a non-moving party in opposition to a motion for summary judgment, *See Early v. Champion Int'l. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Along those same lines, "[b]ald conclusions, opinions, and hearsay without supporting specific facts are not admissible and do not create a genuine issue of material fact." *Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1168 (M.D. Ala. 19985) (citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

Following our review of both declarations – in addition to the materials those declarations rely upon to support Plaintiff's assertions – we are left with no choice but to find that each must be disregarded almost entirely. The information contained in each declaration are replete with inadmissible hearsay, conclusory assertions, and self-serving statements that lack any factual basis. *See* Fed. R. Civ. P. 56(c)(4) (stating that affidavits and declarations used to support or oppose a motion for summary judgment "must be made on personal knowledge [and] set out facts that would be admissible in evidence."); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1268 n.10 (11th Cir. 2010) (finding testimony from plaintiff about what others told her, without offering affidavits or sworn statements from those other employees, was inadmissible hearsay that could not be used to defeat summary judgment). Many of the statements are nothing more than rank speculation by Plaintiff as to Defendant's motives, argumentative or scandalous statements, and Venerio's commentary on other individuals' purported states of

mind. [*See* Decl. of P. Venerio, ¶ 7 (stating that Utset "felt comfortable to initiate his sexual harassment towards me"); ¶ 26 (declaring that a vice president in her division allowed her to apply for a position despite a 24-month waiting period to do so as a result of the alleged emotional, physical, and mental abuse she claims she suffered at the hands of Utset)].

Additionally, it is clear that certain statements contained in the declaration directly contradict prior statements made by Venerio during her deposition. As an example, at one point Plaintiff states in her declaration that Utset began questioning the way she dressed and urged her "to start dressing less covered up (sic) [to] show more of [her] attributes." [D.E. 35-1, ¶ 5]. This directly contradicts sworn deposition testimony given prior to the filing of that declaration, in which she repeatedly testified that Utset never made any sexually-suggestive or offensive comments in her presence during the time she worked as his assistant. [*See* Depo. of P. Venerio, pp. 33-36].

Thus, and in light of this record, we find that the statements contained in the declarations filed by Plaintiff should not be considered for purposes of both parties' summary judgment motions. However, and contrary to Defendant's assertion, the proper remedy is not to strike a purported "sham" affidavit. Instead, we must simply disregard any portions that directly contradict sworn answers given in response to unambiguous questions. *Feliz v. United States Parcel Servs., Inc.*, 2017 WL 5634304, *6 (S.D. Fla. May 10, 2017); *see also Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) (affirming district court's decision to disregard

sham affidavit because it contradicted two depositions); *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1372 (S.D. Fla. 2014) (disregarding the plaintiff's declaration "when and to the extent it contradicts Plaintiff's deposition and other clear record evidence" when considering whether to grant motion for summary judgment).

Accordingly, although we find that Defendant's Motion to Strike should be denied, we will not rely on any of the statements contained in Plaintiff's declaration that are contradictory, fail to identify the evidence in this record that Plaintiff claims support each of her assertions, or otherwise fail to comport with Rule 56(c) of the Federal Rules of Civil Procedure.

### B. *The Sexual Harassment Claim*

Decisions addressing sexual harassment under Title VII of the Civil Rights Act of 1964 also apply to FCRA claims of sexual harassment. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII."). Hostile work environment sexual harassment occurs when "an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive environment." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989).[4]

---

[4]   A hostile work environment is the second of two types of claims of sexual harassment in the workplace. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004). The first involves what is known as *quid pro quo* sexual

To establish a prima facie case for hostile work environment sexual harassment, Plaintiff must show: (1) that she belongs to a protected group; (2) that the employee was subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, or other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) there exists a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903-905 (11th Cir. 1982)). The Supreme Court has instructed that for such an allegation to be actionable, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

We are tasked in determining whether an environment is sufficiently hostile or abusive taking into account "all the circumstances," to include the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Id.* at 787-88. We must not, however, punish "genuine but innocuous differences in the ways men and women routinely interact

---

harassment, where a tangible employment action occurs as the result of an employee's refusal to submit to a supervisor's sexual demands. *Id.* The facts here do not present such a claim.

with members of the same sex and of the opposite sex," and simple teasing, offhand comments, and isolated incidents – unless extremely serious – "will not amount to discriminatory changes" in the terms and conditions of one's employment. *Id*.; *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.").

Both parties' arguments focus on the fourth prong of the sexual harassment inquiry, and we must decide whether Utset's alleged harassing behavior can be considered sufficiently "severe or pervasive." FedEx claims that Plaintiff only complains of two or three incidents where Utset allegedly "brushed up against her" – neither of which "was accompanied by any sexually harassing comments" – and that the dropping of items on the floor on several occasions make it impossible for a finding that the behavior complained of by Plaintiff can be sufficiently severe or pervasive. [D.E. 32, pp. 7-8]. We agree.

"Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." *Mendoza*, 195 F.3d at 1246. The employee must "subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms of employment and this subjective perception must be objectively reasonable." *Id*. (citation and quotation omitted). The objective component of this analysis "is somewhat fact intensive," and

> the Supreme Court and [the Eleventh Circuit] have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.

*Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). "The court should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive work environment." *Id.*

Venerio presented evidence of two different types of allegedly harassing conduct: (1) instances where Utset dropped documents and other items on the floor and made her pick them up for him, which allegedly allowed him to watch her bend over to retrieve the items; and (2) instances where he "brushed up" or "rubbed" against her body. In total, she complains of "five or ten" instances where she was asked to retrieve items from the floor, [Depo. of P. Venerio, p. 4], and two or three instances where Utset allegedly initiated physical contact. *Id.*, pp. 21, 25. Plaintiff admitted that at no point did Plaintiff make sexually-charged or offensive comments pertaining to the alleged harassing behavior. *Id.*, p. 33-34. Plaintiff also described one instance in which, after telling Utset that she would be dressing as a "prisoner" for Halloween, he allegedly said to her that he was "going to go ahead and dress as a warden." *Id.*, p. 39.

As an initial matter, we find that the frequency of the alleged harassing conduct does not necessarily amount to pervasive behavior. Plaintiff claims that Utset's alleged behavior occurred over a period of one or two years, and in total involved five-to-ten incidents. Yet under Eleventh Circuit guidance, these incidents occurring over the relevant time period – as defined by either Defendant or Plaintiff – do not amount to such an extent that we can determine that the conduct should be considered "pervasive." *Cf. Hulsey*, 367 F.3d at 1248 (eighteen incidents over a three-week period sufficient to be considered objectively severe and pervasive); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 506 (11th Cir. 2000) (fifteen incidents over the course of four months sufficient for finding of pervasive conduct).

But even if we got past that element, the actual behavior Plaintiff complains about is definitely not of the kind and severity that would allow for a *prima facie* finding of sexual harassment under the FCRA or Title VII. Plaintiff claims that the harasser brushed up against her 2-3 times, and dropped papers and other items on the ground to allegedly watch her bend over to pick them up. But when these instances occurred, Plaintiff's own testimony establishes that Utset often apologized or excused himself for dropping the documents. *Id.*, pp. 9, 11-12, 14, 22. Further, Venerio admitted that Utset's alleged actions were never accompanied by sexist comments, *id.*, p. 33, and the alleged sexually-harassing conduct never involved any remark that Plaintiff deemed offensive. *Id.*, p. 34. Under this set of facts, we find

that an objective person could not find the conduct sufficiently severe to constitute harassment.[5]

The conduct described in Plaintiff's deposition might be deemed crude, annoying, outside the scope of her duties as an administrative assistant, and – if there actually was intent by Utset to make Plaintiff do these tasks for the reasons she claims – arguably pig-headed. But conduct deemed "rude and boorish…falls short of describing severe and pervasive harassment necessary to support [such a] claim." *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807-08 (11th Cir. 2012); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (recognizing that Title VII is "neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."). For this reason, she fails to establish a *prima facie* case of sexual harassment. *See Mendoza*, 195 F.3d at 1247.

The Eleventh Circuit has delineated a minimum level of severity necessary for a finding of harassing conduct to constitute harassment, "and the bar is quite high." *Manganiello v. Town of Jupiter Inlet Colony*, 2013 WL 6577377, at *7 (S.D. Fla. Dec. 16, 2013). A simple survey of cases within the Eleventh Circuit dealing with hostile work environment claims based on sexual harassment support our conclusion that the conduct at issue cannot be considered sufficiently severe as a matter of law.

---

[5]     FedEx also argues that Plaintiff's sexual harassment claim is barred because it successfully raised the *Ellerth-Faragher* affirmative defense, as established in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Because Plaintiff failed to establish her claim for sexual harassment, we do not need to reach a decision as to whether the *Ellerth-Faragher* defense applies.

In *Gupta v. Florida Bd. of Regents*, the Eleventh Circuit confronted conduct far more egregious than that which Utset was allegedly perpetrating. In that case, a plaintiff alleged that her harasser "put his hand on [her] right thigh" with part of his hand on the inside of her thigh. *See Gupta v. Florida Bd. or Regents*, 212 F.3d 571, 579 (11th Cir. 2000) (overruled on other grounds by *Burlington N. v. Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Other instances involved the harasser lifting the hem of plaintiff's dress after asking what type of material she was wearing, making phone calls to the plaintiff about spending the night with her, and describing her as "innocent" and stating that he could tell that she lacked sexual experience. *Id*. The Eleventh Circuit found that this evidence did not support a finding that, from an objective viewpoint, the harassment was sufficiently severe or pervasive to constitute actionable sexual harassment. *Id*.

Likewise, in *Mendoza*, the Court determined that the plaintiff's accuser had engaged in the following conduct: "(1) one instance in which [the harasser] told [plaintiff] 'I'm getting fired up'; (2) one occasion in which [the harasser] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [the harasser] made a sniffing sound while looking at [plaintiff's] groin area and one instance of sniffing without looking at her groin; and (4) [the harasser's] constant following and staring at [plaintiff] in a 'very obvious fashion.' " *Mendoza*, 195 F.3d at 1247. The Eleventh Circuit concluded the district court did not err in granting defendant judgment as a matter of law because the alleged

conduct was insufficiently severe to sustain a claim for sexual harassment. *Id.* at 1253.

Likewise, in *Mitchell*, a plaintiff alleged that her harasser attempted to kiss her after a Christmas party and called her a "frigid bitch" when his advances were refused. *Mitchell v. Pope*, 189 F. App'x at 913 n.3. The harassing individual also allegedly – among other things – stated that Plaintiff "sure [looked] fine" and commented that she "must be working out"; appeared several times at her home over the course of a single month and told plaintiff's son that he was in love with her; commented about how he wished she wore jeans more often because her "ass sure does look fine"; told her "you can just walk into the room and I'd get an erection"; and rubbed up against her, whispered in her ear, and put his arm across her chest. *Id*. The Eleventh Circuit affirmed summary judgment in favor of the defendants, despite it dealing with conduct far more excessive than what Utset allegedly engaged in here.   Though the harasser's behavior was deemed "reprehensible," the Eleventh Circuit found that it was "not the kind of 'severe' harassment necessary for liability to attach under Title VII." *Id*. at 913.

Support for our decision concerning the legal insufficiency of Plaintiff's claim is not only limited to the Eleventh Circuit. Indeed, various Courts of Appeal have also rejected sexual harassment claims based on conduct that is *far* more severe than the facts outlined here. *See generally Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir. 1999) (holding that several incidents over a two-year period, including comments that the plaintiff's "elbows are

the same color as [her] nipples" and that plaintiff had big thighs, and attempts to look down the plaintiff's dress, were insufficient to support a hostile environment claim); *Adusimilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998) (finding insufficient for purposes of establishing hostile work environment claim instances where co-employees teased plaintiff, made sexual jokes aimed at her, commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said "well, you got to get it when you can."); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (holding insufficiently severe or pervasive to support a hostile environment claim nine instances of offensive behavior over seven months, including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation.").

When considering the totality of the circumstances, and in light of the cases cited above, we find that the behavior at issue, even assuming it is true in the light most favorable to Plaintiff, fails to establish a level of "severity" sufficient to support a finding of liability under the FCRA or Title VII. While Plaintiff may have indeed found the conduct subjectively offensive, the dropping of the items of the floor and the alleged instances of physical contact were only momentary and were not coupled

with any sexually suggestive comments, innuendos or derogatory or degrading remarks. *See Gupta*, 212 F.3d at 585. And over the two-year period at issue, they were too isolated and sporadic to be deemed pervasive.  When comparing these facts to the cases discussed above, we find that Plaintiff's claim is insufficient as a matter of law and that Defendant is entitled summary judgment on Count I.

### C.    *Retaliation Claim*

We also find that Defendant is entitled to summary judgment on Plaintiff's retaliation claim. The FCRA includes an anti-retaliation provision, which reads as follows:

> It is an unlawful employment practice for an employer, an employment agency, a joint-labor management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under the section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

Fla. Stat. § 716.10(7).[6] The Eleventh Circuit requires a plaintiff to show three things in order to establish a *prima facie* case of retaliation: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is "a causal link between the protected expression and the adverse action." *Id.*; *see also Muggleton v. Univar USA, Inc.*, 249 F. App'x 160, 163 (11th Cir. 2007). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. *Crawford*

---

[6]    As noted above, the analysis of retaliation claims brought under the FCRA is patterned after Title VII. *Harper*, 139 F.3d at 1387.

*v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). If the employer meets this burden, then the plaintiff must show that the employer's proffered reason is mere pretext for retaliation. *Id.* And to meet that burden, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997).

Plaintiff alleges that she suffered the following adverse employment actions while working for Defendant: (1) she was not chosen for the FP&A division's financial analyst position, which she applied for in 2015; (2) Benjamin Alexander picked Alba Restrepo over Venerio as his new administrative assistant in 2016; and (3) the termination of her employment in June of 2016. We find, however, that Defendant is entitled to judgment as a matter of law because she cannot overcome the legitimate, non-discriminatory reasons for the adverse employment actions allegedly taken against her. [7]

With regard to the financial analyst and administrative assistant positions, FedEx articulated a legitimate, nondiscriminatory reason for not choosing Venerio for each: it selected better-qualified and higher-scoring candidates. [*See* Decl. of M. Borge Gutierrez, D.E. 33-4, ¶ 6 (for the financial analyst position); Decl. of B.

---

[7]     Because we find that Plaintiff cannot show that the reasons Defendant offered are a pretext for discrimination, we need not determine whether Venerio establishes a *prima facie* case for retaliation. *Center v. Secretary, Dept. of Homeland Security, Customs and Border Protection Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018).

Alexander, D.E. 33-3, ¶ 8 (for the administrative assistant position)]. A three-person panel determined that Plaintiff was not the best candidate for the financial analyst position because she lacked technical skills, had difficulty with the finance exam, and the outside candidate selected for the position was better-suited for the role. [Decl. of M. Borge Gutierrez, D.E. 33-4, ¶ 6]. As to the administrative assistant position, Alba Restrepo – the other candidate – gave a stronger presentation, seemed better-prepared, and received the highest score from all three panel members conducting the interview. [Decl. of B. Alexander, D.E. 33-3, ¶ 8].

Plaintiff argues that the legitimate reasons proffered by Defendant for not selecting her for the financial analyst position "are unworthy of credence," and that a jury could find that the denial of her application was a mere pretext for discrimination. [D.E. 44, p. 12]. But she does not offer any evidence to support this position. Instead, Plaintiff merely cites to the conclusory statements found within her declarations to "explain away" the shortcomings discussed by FedEx when rejecting her for the role, but these statements amount to nothing beyond a "quarrel" with the ultimate sufficient. This is insufficient as a matter of law. *See id*. at 1088 ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient.") (internal citation omitted).

Plaintiff also failed to demonstrate that the motivation behind denying her the administrative assistant position was mere pretext for discriminatory behavior. Plaintiff, in essence, argues that she was better qualified for the position than

Restrepo, the ultimate choice for the job. [D.E. 44, p. 14]. But Venerio "cannot prove pretext by asserting baldly that she was better qualified than the person who received the position at issue." *Wilson*, 376 F.3d at 1090. She must instead "adduce evidence that the disparity in qualifications was 'so apparent as virtually to jump off the page and slap you in the face.' " *Id.* (quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)).

Plaintiff failed in this regard. Once again, she offers nothing but conclusory statements about her own qualifications, camouflaged as "evidence," to support her assertion that she was the stronger candidate. In fact, a review of the record evidence actually suggests that Restrepo was the better choice. *See id.* Before receiving the job, Restrepo had previously performed overflow work for various corporate officers. Additionally, the three-person interview panel was unanimous in their findings that Restrepo gave a better presentation during her interview and scored higher than Venerio on the eight questions each candidate was asked. [Decl. of B. Alexander, D.E. 33-3, ¶ 8 and Exhibit 1]. But even if, on balance, a reasonable juror could find that Plaintiff was more qualified, that is still not enough. Based on the evidence before us, we cannot find that the disparity in candidates was "so great that a reasonable fact-finder could infer" that Plaintiff's denial was nothing more than pretext. *See, e.g., Wilson*, 376 F.3d at 1090; *Cooper v. Southern Co.,* 390 F.3d 695 (11th Cir. 2004) (noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

question"); *Higgins v. Tyson Foods, Inc.,* 196 F. App'x 781, 784 (11th Cir. 2006) (affirming summary judgment where defendant determined others to be better qualified than plaintiff after a considered evaluation which applied reasonable criteria, and which included independent panel interviews and review); *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000) ("In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex.") (affirming entry of judgment as a matter of law where "the evidence is insufficient to raise a genuine issue of fact regarding whether [defendant's] stated reason for promoting [comparator] instead of her is pretextual. None of [plaintiff's] proffered evidence established that she was more qualified than [him], let alone so clearly more qualified for the position . . . that a reasonable juror could infer discriminatory intent from the comparison."); *Deines v. Texas Dept. of Protective & Regulatory Servs.,* 164 F.3d 277, 281 (5th Cir. 1999) ("it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position. . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

Finally, Plaintiff cannot rebut the legitimate reasons given by FedEx for her ultimate termination. A security investigation demonstrated that the time she recorded on her time sheets did not match the card entry system that logged her

arrival to the office and when she left for lunch, indicating that she lied about the hours she worked. [Decl. of E. Utset, D.E. 33-5, ¶ 8; Decl. of S. Pittman, D.E. 33-6, ¶ 6]. Thus, it was determined that she had violated the company's policies on time-keeping, which would allow for immediate termination of her employment. After her firing, Plaintiff was given the opportunity to appeal the decision, which she did. Nevertheless, Defendant upheld the decision and Plaintiff's termination went into effect immediately.

Plaintiff fails to present sufficient evidence "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528. She simply claims that she did not falsify her timesheet, which – without more – is insufficient to overcome her burden of demonstrating pretext. *See Spann v. Cobb County Pretrial Court Servs. Agency*, 206 F. App'x 910, 912 (11th Cir. 2006) ("When an employer sincerely believes an employee committed rule infractions…that belief, and thus the legitimate, non-discriminatory reason for termination, cannot be rebutted by an employee's argument that the infractions did not occur."). There is also no evidence in the record to support her claim that FedEx "had been experiencing glitches in the [card entry] system [the] week in question," [D.E. 45-1, ¶ 23-24], and such conclusory allegations cannot be used to support a finding of pretext. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1997) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of

pretext…where [an employer] has offered…extensive evidence of legitimate, non-discriminatory reasons for its actions.") (quotations and citation omitted).

For these reasons, we find that Plaintiff failed to rebut FedEx's legitimate, non-discriminatory reasons for her adverse employment actions, and so her retaliation claim must fail as a matter of law.

## IV.   CONCLUSION

In accordance with our findings above, we hereby **RECOMMEND**: (1) Defendant's Motion to Strike should be **DENIED**; (2) Plaintiff's Motion for Summary Judgment should be **DENIED**; and (3) Defendant's Motion for Summary Judgment should be **GRANTED**.   Judgment should be entered in favor of Defendant on all counts of the Complaint.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Robert N. Scola, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of September, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge