| Paola Venerio, Plaintiff, | ) | |
|---|---|---|
| v. | ) | |
| Federal Express Corporation, Defendant. | ) ) ) ) | Civil Action No. 17-22624-Civ-Scola |

## Order Adopting Report and Recommendations and Closing Case

Plaintiff Paola Venerio claims that, while employed by Defendant Federal Express Corporation, her supervisor sexually harassed her. She also alleges that after complaining about the harassment to human resources, she was denied multiple promotions and then fired after being wrongly accused of falsifying her time records. The parties filed cross motions for summary judgment. Venerio argued she was entitled to prevail on both her harassment and retaliation claims because she established a prima facie case on both counts that FedEx could not rebut. (Pl.'s Mot. for Summ. J., ECF No. 34.) Conversely, FedEx maintained that the record evidence failed to reveal a genuine issue of material fact with respect to (1) whether the harassing behavior was sufficiently severe and persuasive or (2) whether FedEx's employment decisions were for legitimate, non-retaliatory reasons. (Def.'s Mot. for Summ. J., ECF No. 32.) The Court referred these motions, along with FedEx's motion to strike Venerio's declaration (Def.'s Mot. to Strike, ECF No. 43) to United States Magistrate Judge Edwin G. Torres. On September 17, 2018, Judge Torres recommended granting summary judgment in FedEx's favor, denying Venerio's motion for summary judgment, and denying FedEx's motion to strike. (Rep. & Rec., ECF No. 55.) Venerio has timely objected to Judge Torres's report and recommendations, focusing solely on whether a genuine issue of material fact remains regarding whether FedEx's proffered reason for firing her was pretextual. (Pl.'s Objs., ECF No. 58.) After review, the Court finds Judge Torres's report and recommendations cogent and compelling, and thus **adopts** his recommendation (**ECF No. 55**) and overrules Venerio's objections. For the following reasons, the Court **grants** FedEx's motion for summary judgment (**ECF No. 32**); **denies** Venerio's motion for summary judgment (**ECF No. 34**); and **denies** FedEx's motion to strike Venerio's declaration (**ECF No. 43**).

1. **Facts Relevant to Venerio's Pretext Claim**

At some point during her employment, Venerio complained to FedEx's human resources department that she was being sexually harassed by her

supervisor, Eduardo Utset. (Pl.'s Dep., ECF No. 33-1, 26.) In the meantime, beginning at least in June 2015, Utset warned Venerio about her lack of punctuality and excessive time spent away from her desk. (June 22, 2015 Email to Pl., Ex. 1 to Cantrelle Decl., ECF No. 33-2, 9–10.) Issues regarding Venerio's timeliness arose throughout the course of her employment. For example, Benjamin Alexander, one of FedEx's managing directors, stated in a declaration that he saw Venerio arrive late and take extended lunches on days when her supervisor, Utset, was traveling or otherwise out of the office. (Alexander Decl. ¶ 14, ECF No. 33-3, 6.) Utset stated that several people, including Alexander, approached him regarding concerns about Venerio's attendance and punctuality. (Utset Decl. ¶ 6, ECF No. 33-5, 3.) He also said that his office faced the parking lot and so he could see her driving in late himself. (*Id.*)

In May 2016, Utset contacted Darren Cantrelle, one of FedEx's vice presidents, to discuss concerns he had about Venerio's falsifying her time records. (Cantrelle Decl. at ¶ 12.) Cantrelle advised him to contact Steve Pittman, FedEx's Latin American Division senior manager of security. (*Id.*) Pittman compared Venerio's time sheets with entries found in the company's card reader and video systems and found discrepancies between when Venerio said she came and left and what the systems showed. (Pittman Decl. ¶ 6, ECF No. 33-6, 3 3–4.) According to her termination letter, dated June 17, 2016, Venerio was terminated as a result of Pittman's findings and conclusions. (June 17, 2016 Termination Letter, Ex. 3 to Cantrelle Decl., ECF No. 33-2, 22.)

For her part, Venerio broadly denies ever falsifying her timesheet. (Pl.'s Resp. to Def.'s Stmt of Facts ¶¶ 14, 20 ECF No. 45, 5, 7.) She says that the emails from Utset regarding his concerns about her timeliness were simply cover so that he could justify "coming after her for interacting with other male coworkers." (*Id.* at ¶ 9.) She maintains that Utset's complaints were "all [] lies" and simply meant to make her look bad. (*Id.* at ¶ 10.) To establish that she was "doing a good job," Venerio points to her handling of three different jobs when she was first hired and the company's hiring of another employee "who immediately after being hired before she even started to work . . . was already being allowed to continuously miss work for weeks at a time." (*Id.*) Venerio also says that Utset only wrote the timeliness-warning emails so that she wouldn't be able to transfer and would have to "remain under his complete control." (*Id.* at ¶ 14.) Venerio also insists that Utset "has never gone to a [vice president] for approval or advi[c]e as to requesting investigations of timesheets or card access investigations." (*Id.* at ¶ 17.) She also explains that "[i]t would have been stupid of her to falsify [her] timesheet when [she knew] how closely Utset was monitoring her." (*Id.*) She also says that Pittman's report is wrong because (1)

there were system programming issues during the days he reviewed; and (2) there are other points of access, on other floors, that were not part of Pittman's review. (*Id.* at 21.)

## 2. Standard of Review

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989) (alterations omitted). The objections must also present "supporting legal authority." Local R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783–84 (quoting *Heath,* 863 F.2d at 822) (alterations omitted). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009).

## 3. Analysis

Venerio complains that Judge Torres erred in determining that she failed to come forward with evidence that would allow a reasonable factfinder to conclude that FedEx's proffered reason for her termination was merely pretextual. She says there is evidence in the record that demonstrates "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in FedEx's allegation that she falsified her timecards and maintains that she was really fired because she had reported being sexually harassed by Utset. After carefully reviewing Venerio's objections, the Court finds them unpersuasive.

In order show that FedEx's proffered reason for her termination was simply a cover, Venerio must demonstrate that the proffered reason was "not just . . . ill-founded," but that is was actually based instead on "unlawful discrimination." *Alvarez v. Royal A. Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010). The Court agrees with Judge Torres that Venerio has shown neither.

Many of Venerio's points are factually unsupported. First, she contends that Utset was well aware of Venerio's allegations that he was sexually harassing her when he initiated the investigations into her time records. The portions of the records she cites to, however, do not support this. Although one of the citations reflects Pittman's declaration that he initiated the investigation at Utset's request (Pittman Decl. at ¶ 4), the other reveals Utset's statement that, in fact, none of Venerio's sexual harassment complaints had even been brought to his attention (Utset Decl. at ¶ 5). Moreover, Venerio's reliance on the "statement" she prepared in response to Utset's timesheet concerns does not, as she implies, support her retaliation claim. Instead, Venerio does not even mention, or even imply, anything about her sexual harassment claims in that document. (Employee Stmt., Ex. 16 to Pl.'s Dep., ECF No. 33-1, 127.) Next, Venerio complains that Pittman's investigation was inadequate because it focuses only on the tenth floor when she "may have had to go to other floors or offices while still working." (Pl.'s Objs. at 4.) However, she provides no support for this contention and, more importantly, she doesn't actually say that she even went to these "other floors or offices"—only that she "may have." Such conjecture cannot possibly raise a genuine fact issue. Venerio also complains Pittman's investigation was flawed because "there were many times where [she] did not need to scan her security card because someone else held the door for her or was passing through at the same time she was." (*Id.* at 4–5). But Pittman's report was based, primarily, on video footage showing her arrival and departure times. (Pittman Decl. at ¶¶ 6–7.) It did not rely on Venerio's card scans.

Some of Venerio's other points are irrelevant. For example, she notes that Pittman's report shows no activity from Venerio after 12:36 p.m. on Friday, May 13, 2016 but that her time sheet reflects that she worked until 6:00 p.m. that day. But the allegations of falsification for that Friday relate only to the time Venerio says she reported to work in the morning; not her lunch or departure times. Venerio also points out that on Tuesday, Wednesday, and Thursday of that week Pittman's report shows her leaving at 6:09, 6:11, and 6:11 p.m, respectively, but that on each day she signed out, on her timesheet, at 6:00 p.m. This shows only that Venerio may have stopped working several minutes before leaving her floor to get onto the elevator. Not only does this information fail to bolster Venerio's claim that Pittman's report was flawed, it also fails to support her contention, such as it is, that there was a "possibility that [she] was working in other areas of the building rather than at her desk." (Pl.'s Objs. at 5.) Furthermore, Venerio's submission that she was extremely busy during the week she was accused of falsifying her timesheet does not support her claim that Pittman's report was in error. Lastly, Venerio's

complaints about the card-access system's malfunctioning and the video time stamp's not being synchronized are unavailing. As set forth earlier, Pittman's investigation relied on video images when the card-access records were unavailable. And the video time stamp was off by only a couple of minutes, a discrepancy that Pittman was aware of and for which he accounted. Neither of these issues genuinely calls into question Pittman's ultimate conclusions about Venerio's timesheets.

Moreover, other aspects of Venerio's objections actually detract from her claim of discriminatory retaliation. In particular, Venerio draws a direct link between an upper-management decision to allow her to leave Utset's department and Utset's decision to initiate the timesheet investigation. This connection implies that Utset's initiation of the investigation was actually motivated by something other than Venerio's sexual harassment claims—that is, her attempt to leave his department. This weakens, rather than bolsters, Venerio's claim. And, finally, Venerio's conclusory statements about what she surmises was the real reason for her termination do not qualify as evidence that could create a genuine issue of material fact.

In short, Venerio has not set forth any genuine issues of material fact from which a reasonable factfinder could conclude that either (1) FedEx's proffered reason for firing her was false or otherwise not credible; or (2) that FedEx had a discriminatory purpose in firing her. At most Venerio has submitted evidence that Pittman's investigation was maybe not as comprehensive as it could have been. But such evidence is far too weak to raise a genuine fact issue in this context.

Venerio has not objected to any other aspects of Judge Torres's report and recommendations. The Court therefore reviewed the remainder of his report for clear error. Based on this review, and the Court's de novo review of those portions of the report to which Venerio objected, the Court **adopts** his recommendation (**ECF No. 55**) and overrules Venerio's objections. Based on the foregoing, the Court **grants** FedEx's motion for summary judgment (**ECF No. 32**); **denies** Venerio's motion for summary judgment (**ECF No. 34**); and **denies** FedEx's motion to strike Venerio's declaration (**ECF No. 43**.)

The Clerk is directed to **close** this case and to **remove it** from the Court's trial calendar. Any other remaining motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on October 3, 2018.

_____
Robert N. Scola, Jr.
United States District Judge